UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALBERTO TAMAYO,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>Defendant. | No. 1:14-CV-3066-JTR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-Motions for Summary Judgment. ECF No. 14, 19. Attorney D. James Tree represents Alberto Tamayo (Plaintiff); Special Assistant United States Attorney Brett Edward Eckelberg represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff filed an application for Supplemental Security Income (SSI) on November 8, 2010, alleging disability since October 2, 2010, due to behavior and mental issues, anxiety, and headaches. Tr. 177, 195. The application was denied initially and upon reconsideration. Administrative Law Judge (ALJ) Gordon W. Griggs held a hearing on August 29, 2012, Tr. 32-70, and issued an unfavorable

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

decision on September 14, 2012, Tr. 18-26. The Appeals Council denied Plaintiff's request for review on March 24, 2014. Tr. 1-6. The ALJ's September 14, 2012, decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on May 22, 2014. ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on February 7, 1987, and was 23 years old on the alleged onset date, October 2, 2010. Tr. 191. Plaintiff completed high school in 2005 and has worked as a grocery store baker, an in-home childcare provider, a dishwasher, a warehouse laborer, a tutor for elementary school children, a deli shop worker and a pizza shop worker. Tr. 47-51, 196. Plaintiff testified at the administrative hearing that he is unable to work because he cannot handle being around so many people. Tr. 51. He stated he could not be around people because they scare or intimidate him. Tr. 53.

At the August 29, 2012, administrative hearing, vocational expert Trevor Duncan (VE) also testified. Tr. 63-69. The VE identified Plaintiff's past relevant work as baker helper, child monitor, kitchen helper, fast food worker, cashier, delivery driver, and material handler. Tr. 65. In response to a hypothetical which reflected Plaintiff's residual functional capacity (RFC), the VE testified that the hypothetical individual would be able to perform Plaintiff's past relevant work as a kitchen helper. Tr. 65-66. The VE further testified that work existed in significant numbers in the national economy which the hypothetical person could perform, including the jobs of janitor, vehicle cleaner, and hand packager. Tr. 66. The VE specifically stated there were no public contact concerns with respect to these positions. Tr. 68.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed de novo, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see, Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This

burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).

## ADMINISTRATIVE DECISION

On September 14, 2012, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since November 8, 2010, the application date. Tr. 20. At step two, the ALJ determined Plaintiff had the following severe impairments: post-traumatic stress disorder (PTSD) and depression. Tr. 20. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 20.

The ALJ assessed Plaintiff's RFC and determined he could perform medium exertion level work, he was able to adapt to occasional and superficial public interaction, and he would be limited to tasks that could be learned in 30 days or less and that involve no more than simple work-related decisions and few workplace changes. Tr. 22.

At step four, the ALJ found Plaintiff was able to perform his past relevant work as a kitchen helper. Tr. 24-25. In the alternative, at step five, the ALJ determined that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including

the jobs of janitor, vehicle cleaner and hand packager.  Tr. 25-26.  The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from November 8, 2010, the application date, through the date of the ALJ's decision, September 14, 2012.  Tr. 26.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred by (1) failing to consider the March 2, 2011 opinion of examining physician Dr. Rodenberger; (2) making legally insufficient findings relating to the impact of Plaintiff's substance abuse; and (3) failing to accord weight to two psychological evaluations conducted by "other sources."

## DISCUSSION

**A.    Plaintiff's Credibility**

While Plaintiff has not specifically challenged the ALJ's finding that Plaintiff is not fully credible, Tr. 22, the Court finds the ALJ's credibility determination significant in this case.

The ALJ indicated the following reasons for why he found Plaintiff was not entirely credible:  Plaintiff was not always forthcoming with examiners about his history of drug abuse; contrary to his allegations of disability, he had been playing competitive basketball which demonstrated a good level of mental and physical capacity; and the record reflected inconsistent statements by Plaintiff.  Tr. 22-23.  The ALJ further noted that when Plaintiff was seen at Dr. Toews' office, Plaintiff reported he was a "pathological liar" as a child, Tr.  24, 341, a statement Plaintiff did not dispute at the time of the administrative hearing, Tr. 61.

The rationale provided by the ALJ is fully supported by the record, and the ALJ's determination that Plaintiff's statements were not fully credible is uncontested by Plaintiff.  *See Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d

1145, 1164 (9th Cir. 2003) (issues not specifically and distinctly contested in a party's opening brief are considered waived). Since Plaintiff was properly found by the ALJ to be not entirely credible, the ALJ appropriately accorded little weight to medical reports based primarily on Plaintiff's subjective complaints. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (a physician's opinion premised primarily on a claimant's subjective complaints may be discounted where the record supports the ALJ's discounting of the claimant's credibility); *Morgan v. Comm'r. of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (the opinion of a physician premised to a large extent on a claimant's own account of symptoms and limitations may be disregarded where they have been properly discounted).

**B.     Medical Source Opinions**

Plaintiff contends the ALJ erred by failing to accord proper weight to the opinions of examining medical sources regarding his psychological limitations. ECF No. 14 at 10-11, 16-19. Plaintiff specifically argues the ALJ erred by failing to consider a March 2, 2011, statement by Philip Rodenberger, M.D., and by giving little weight to the evaluations completed by Sandy Elsner, BA, (signed by Nicole Southard, MWS, MHP), and Christopher Clark, M.Ed., LMHC. *Id*.

The ALJ found that although Plaintiff has mild restrictions in activities of daily living, moderate difficulties in social functioning and moderate difficulties in concentration, persistence and pace, Plaintiff retained the RFC to adapt to occasional and superficial public interaction and perform tasks that could be learned in 30 days or less and that involve no more than simple work-related decisions and few workplace changes. Tr. 21-22. The Court finds the ALJ's interpretation of the medical record is supported by substantial evidence. *See infra*.

**1.     Dr. Rodenberger, March 2, 2011, Statement**

On March 2, 2011, Philip Rodenberger, M.D., wrote that his initial meeting with Plaintiff revealed "one of the more impaired posttraumatic stress disordered

individuals" he had seen.  Tr. 411.  Dr. Rodenberger diagnosed PTSD, severe; assessed a Global Assessment of functioning (GAF) score of 45; and indicated a belief that Plaintiff could benefit from psychiatric treatment.  Tr. 411.  Dr. Rodenberger expressed hope that Plaintiff's symptoms could be better controlled with more aggressive medication treatment.  Tr. 411.

Plaintiff argues the ALJ erred by completely ignoring Dr. Rodenberger's March 2, 2011, medical statement.  Dr. Rodenberger, however, did not state an explicit opinion about how Plaintiff's symptoms affected his activities or ability to work at that time.  Tr. 411.  Although Dr. Rodenberger assigned a GAF score of 45,[1] an ALJ has no obligation to credit or even consider GAF scores in a disability determination.  *See* 65 Fed. Reg. 50746, 50764-50765 (Aug. 21, 2000) ("The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorders listings.").  In fact, the GAF scale is no longer included in the DSM–V.[2]

Plaintiff cites *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012), for his argument that the ALJ's failure to discuss Dr. Rodenberger's March 2, 2011, statement was reversible error.  ECF No. 14 at 10-11; ECF No. 20 at 2-4.

---

[1] A GAF score between 41 and 50 denotes "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  Diagnostic and Statistical Manual of Mental Disorders–IV, 32 (4th ed. 1994).

[2] "It was recommended that the GAF be dropped from the DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice."  Diagnostic And Statistical Manual of Mental Disorders–V, 16 (5th ed. 2013).

In *Hill*, the ALJ's decision failed to address a doctor's opinion that Hill's "combination of mental and medical problems makes the likelihood of sustained full time competitive employment unlikely." *Hill*, 698 F.3d at 1160. The Ninth Circuit determined that the ALJ's disregard of that medical opinion was not harmless error because the statement was an assessment, based on objective medical evidence, of Hill's likelihood of being able to sustain full time employment given the many medical and mental impairments Hill faced and her inability to afford treatment for those conditions. *Id*.

Unlike the doctor in *Hill*, Dr. Rodenberger's statement merely indicates that Plaintiff was one of the more impaired PTSD individuals he had ever seen. Tr. 411. As noted by Defendant, the statement simply compares Plaintiff to other unidentified people with PTSD, and, without information regarding the severity of the other individuals' PTSD, the ALJ could not gain insight from the statement on how PTSD affected Plaintiff's capabilities for the purpose of formulating an RFC determination. ECF No. 18 at 6. Dr. Rodenberger's statement was thus not material or probative to the disability determination. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (finding an ALJ did not err by ignoring a medical report because the report at issue was neither significant nor probative).

The circumstances of the examination further reveal Dr. Rodenberger's statement was not material to the ALJ's disability determination. Because the statement does not mention clinical testing, it appears the exam was based solely upon Plaintiff's subjective reporting. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (an ALJ may reject a physician's opinion if it is based to a large extent on a plaintiff's self-reports that have been properly discounted as incredible); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical

findings."). Dr. Rodenberger's statement does not amount to significant, probative evidence; therefore, the ALJ was not required to address it.

The Court finds the ALJ did not err by failing to discuss Dr. Rodenberger's March 2, 2011, statement in this case.

### 2. Sandy Elsner, BA, and Nicole Southard, MWS, MHP

Plaintiff next contends the ALJ erred by failing to accord proper weight to the opinions of Sandy Elsner, BA, and Nicole Southard, MWS, MHP, regarding Plaintiff's functioning in September 2006. ECF No. 14 at 16. Plaintiff argues the opinions expressed by Ms. Elsner/Ms. Southard on that occasion demonstrate Plaintiff is more psychologically limited than what was determined by the ALJ in this case. ECF No. 14 at 16-19.

On September 26, 2006, Ms. Elsner/Ms. Southard completed a Psychological/Psychiatric Evaluation form. Tr. 417-422. They diagnosed Plaintiff with an adjustment disorder with mixed anxiety and depressed mood and found Plaintiff had one moderate functional limitation, in his ability to respond appropriately and tolerate the pressure and expectations of a normal work setting. Tr. 418-419. Ms. Elsner/Ms. Southard marked "no" on the section of the report asking whether there was an indication of alcohol or drug abuse. Tr. 418.

The Court finds it important to note that the opinion of Ms. Elsner/Ms. Southard greatly predates the relevant time period in this matter. *See Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989) (medical opinions that predate the alleged onset of disability are of limited relevance). The Psychological/Psychiatric Evaluation form was completed in September 2006, when Plaintiff was 19 years old and more than four years prior to the alleged onset date, October 2, 2010. Tr. 422. It thus does not address claimant's medical status during the relevant period at issue in this action.

///

///

     Moreover, Ms. Elsner/Ms. Southard opined Plaintiff's symptoms would last a minimum three months and a maximum nine months. Tr. 420. Consequently, they concluded Plaintiff's mental limitations would not meet the duration requirements of the Social Security Act. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (an individual shall be considered disabled if she has an impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months).

     In any event, only licensed physicians and certain other qualified specialists are considered "acceptable medical sources." 20 C.F.R. § 404.1513(a) (acceptable medical sources include only licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists). Ms. Elsner and Ms. Southard are not acceptable medical sources; therefore, their opinions do not qualify as "medical evidence . . . from an acceptable medical source" as required by the Social Security Regulations. 20 C.F.R. §§ 404.1513, 416.913.

     Ms. Elsner and Ms. Southard are "other sources," and an ALJ may discount testimony from "other sources" if he "'gives reasons germane to each witness for doing so.'" *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)).

     The ALJ accorded the evaluation report of Ms. Elsner and Ms. Southard "little weight" because it was not produced by an acceptable medical source and the evaluator was not given accurate information about Plaintiff's drug use. Tr. 22, 24. It is undisputed Plaintiff has a history of substance abuse and that Plaintiff has not always been forthright about his substance use with mental health providers, including Ms. Elsner and Ms. Southard. ECF No. 14 at 16, 18. The Court finds the ALJ's rationale, that Plaintiff failed to provide this basic drug background information to the psychological evaluators, is a germane reason for according little weight to the September 2006 report of Ms. Elsner and Ms. Southard.

As noted by Defendant, the ALJ nonetheless accounted for the moderate functional limitation assessed by Ms. Elsner and Ms. Southard. Tr. 22. The non-exertional limitations in the RFC assessment of the ALJ, limiting Plaintiff to the performance of tasks that could be learned in 30 days or less and that involved no more than simple work-related decisions and few workplace changes, reasonably account for a moderate limitation in Plaintiff's ability to respond appropriately and tolerate the pressure and expectations of a normal work setting as assessed by Ms. Elsner and Ms. Southard.

The ALJ did not err with respect to his findings regarding the September 2006 report of Ms. Elsner/Ms. Southard.

### 3. Christopher Clark, M.Ed., L.M.H.C.

Plaintiff also asserts the ALJ erred by failing to give greater weight to the opinion of mental health counselor Christopher Clark, M.Ed., L.M.H.C. ECF No. 14 at 17.

On November 22, 2010, Mr. Clark completed a Psychological/Psychiatric Evaluation form. Tr. 333-338. It appears the evaluation form is co-signed by Dr. Rodenberger. Tr. 336. Although non-physicians working under supervision are to be treated as teams, *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996), there is no evidence Mr. Clark regularly consulted with or was closely supervised by a physician in this case. Mr. Clark alone was identified as the "examining professional" on the report and signed as the "examining professional" responsible for the report. Tr. 336. Dr. Rodenberger signed as the "releasing authority" on the report, but there is no evidence Dr. Rodenberger interacted with Plaintiff or prepared, supervised or concurred in Mr. Clark's report. Dr. Rodenberger merely co-signed the form as the "releasing authority." Like Ms. Elsner and Ms. Southard, Mr. Clark is not an acceptable medical source. His opinions thus do not qualify as "medical evidence . . . from an acceptable medical source" as required by the Social Security Regulations. 20 C.F.R. §§ 404.1513, 416.913. As noted

above, an ALJ may discount testimony from an "other source" if he "'gives reasons germane to each witness for doing so.'" *See Turner*, 613 F.3d at 1224.

Mr. Clark diagnosed Plaintiff with Psychosis, NOS; Panic Disorder with agoraphobia; and Depression, NOS. Tr. 334. He opined that Plaintiff had several "severe" functional limitations, as well as marked and moderate functional limitations, and concluded Plaintiff would likely take "several years to gain control over his chronic anxiety before being able to tolerate expected stressors in a competitive work environment." Tr. 335-336. Mr. Clark marked "no" with respect to all questions on the form discussing any issues Plaintiff may have with alcohol or substance abuse. Tr. 335.

As with Ms. Elsner and Ms. Southard, the ALJ accorded Mr. Clark's evaluation report "little weight" because it was not produced by an acceptable medical source and the evaluator was not given accurate information about Plaintiff's drug use. Tr. 22, 24. It is uncontested in this matter that Plaintiff has a history of substance abuse and that he has not always been forthright about his substance use with mental health providers, including Mr. Clark. ECF No. 14 at 16, 18. The Court finds the ALJ's rationale in this regard, that Plaintiff failed to provide the evaluator information pertaining to his substance abuse history, is a germane reason for according little weight to the other source opinions of Mr. Clark.

Furthermore, as noted by Defendant, ECF No. 19 at 9-11, other evidence of record, including the opinions of Dr. Toews, Ms. Champoux and Dr. Moon, contradict Mr. Clark's "other source" opinions regarding Plaintiff's functional limitations. *See infra*. The ALJ did not err by according "little weight" to the Psychological/Psychiatric Evaluation form completed by Mr. Clark.

**4.     Peggy Champoux, MSW**

On July 7, 2010, therapist Peggy Champoux, MSW, completed a Psychological/Psychiatric Evaluation form following a consultative examination of

ORDER GRANTING DEFENDANT'S MOTION . . . - 12

Plaintiff. Tr. 325-332. The evaluation form is co-signed by an M.D., but the signature of the doctor is illegible. Tr. 330.

Ms. Champoux diagnosed depression, NOS, and cannabis abuse and rated Plaintiff as having no worse than moderate limitations in cognitive and social functioning. Tr. 327-328. Ms. Champoux found Plaintiff had mild or no limitations in interacting appropriately with co-workers, supervisors and the public and opined Plaintiff was capable of performing repetitive, non-skill labor. Tr. 328.

The ALJ afforded "some weight" to the evaluation, noting Plaintiff's history of drug abuse and history of abusive relationships was considered by the evaluator. Tr. 23. Ms. Champoux's functional limitation findings are consistent with the weight of the record evidence and were incorporated in the ALJ's RFC determination. The ALJ did not err with respect to the weight he accorded to Ms. Champoux in this case.

**5.    Tae-Im Moon, Ph.D.**

On February 9, 2012, Tae-Im Moon, Ph.D., also completed a Psychological/Psychiatric Evaluation form. Tr. 515-518.

Dr. Moon diagnosed PTSD, by history, and major depressive disorder, recurrent, severe. Tr. 515. Dr. Moon indicated that nine months of consistent mental health services would be a sufficient length of time to stabilize Plaintiff. Tr. 516. However, at the time of the examination, Dr. Moon opined that Plaintiff presented as emotionally unstable and that his poor cognitive and social functioning would substantially interfere with his ability to work. Tr. 516.

The ALJ afforded "some weight" to the evaluation, again noting Plaintiff's history of drug abuse and history of abusive relationships was considered by the evaluator. Tr. 23-24. The ALJ specifically discounted Dr. Moon's statement that Plaintiff had poor cognitive and social functioning that would substantially interfere with his ability to work, finding the statement was inconsistent with Dr. Moon's report that Plaintiff could be expected to have significant improvement

ORDER GRANTING DEFENDANT'S MOTION . . . - 13

within about nine months with consistent treatment.  Tr. 24.  The ALJ concluded that Dr. Moon's psychological evaluation of Plaintiff revealed basic abilities and potentials that were incorporated into the RFC determination.  Tr. 24.  For example, Dr. Moon noted Plaintiff started using marijuana and methamphetamine shortly after graduating from high school but elected to attend a three-month inpatient chemical dependence program in 2011 based on his motivation to be a good father for his two-year-old daughter.  Tr. 24, 516.  The ALJ indicated this demonstrates that Plaintiff has shown a measure of self-discipline and commitment when he is motivated.  Tr. 24.

The ALJ appropriately accorded Dr. Moon's findings some weight and incorporated those findings in his RFC determination.  Tr. 22, 24.

### 6. Jay M. Toews, Ed.D.

On April 4, 2011, Jay M. Toews, Ed.D., completed a report following a psychological evaluation of Plaintiff.  Tr. 341-350.  Dr. Toews diagnosed symptom exaggeration, probable; methamphetamine abuse, in self-reported remission; cocaine abuse in self-reported remission; marijuana abuse in self-reported remission; rule out active drug use; depression, NOS; and anxiety, by history.  Tr. 345.  Dr. Toews noted Plaintiff was able to remember test directions and test items and was marginally compliant.  Tr. 345.  He opined Plaintiff was fully capable of remembering multi-step simple instructions, would be able to interact with coworkers and supervisors, and was capable of performing routine and repetitive types of work activity.  Tr. 345.

The ALJ afforded "some weight" to Dr. Toews' evaluation, noting Dr. Toews' observations and conclusions were consistent with Plaintiff's activities of daily living and Plaintiff's propensity for prevarication.  Tr. 24.  The ALJ's RFC determination properly includes the limitations assessed by Dr. Toews.

///

///

### 7. Edward Beaty, Ph.D.

On June 2, 2011, state agency reviewing physician, Edward Beaty, Ph.D., reviewed the record and noted that Plaintiff had some moderate functional limitations. Tr. 105-107. Nevertheless, Dr. Beaty opined Plaintiff was able to understand, remember and carry out 1-3 step instructions and routine/repetitive work tasks, but would need more time to understand, remember and carry out more complex instructions and tasks. Tr. 106. Dr. Beaty further opined that Plaintiff was able to work with co-workers and supervisors, but would work best in a setting with only superficial general public contact. Tr. 107.

This state agency reviewing physician's report lends further support for the ALJ's RFC assessment in this case. Tr. 22.

It is the responsibility of the ALJ to determine credibility, resolve conflicts in medical testimony and resolve ambiguities, *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996), and this Court may not substitute its own judgment for that of the ALJ, 42 U.S.C. § 405(g). Where, as here, the ALJ has made specific findings justifying a decision, and those findings are supported by substantial evidence in the record, this Court's role is not to second-guess that decision. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

Based on the foregoing, the ALJ did not err by giving little weight to the other source opinions of Ms. Elsner, Ms. Southard and Mr. Clark and by failing to address Dr. Rodenberger's March 2, 2011, statement. The Court finds the ALJ's RFC determination is in accord with the weight of the record evidence and free of legal error.

### C. Drug Addiction and/or Alcoholism (DAA)

Plaintiff also contends the ALJ committed reversible error by making legally insufficient findings relating to the impact of Plaintiff's substance abuse. ECF No.

///

///

14 at 12-15. Defendant responds that the ALJ properly accounted for Plaintiff's substance abuse in formulating his RFC finding, and the ALJ was not required to perform a DAA analysis in this case.

The Social Security Act bars payment of benefits when DAA is a contributing factor material to a disability claim. 42 U.S.C. §§ 423(d)(2)(C), 1382(a)(3)(J); *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998). "Material" means that the individual would not be found disabled if he stopped using drugs and/or alcohol. Plaintiff has the burden of showing that his DAA is not a contributing material factor to disability. *Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001). If there is evidence of DAA and the individual succeeds in proving he is disabled, then the ALJ must proceed to determine if the claimant would be disabled if he stopped using alcohol and/or drugs. *Bustamante v. Massanari*, 262 F.3d 949 (9th Cir. 2001); 20 C.F.R. §§ 404.1535, 416.935. However, if an ALJ finds that the claimant is not disabled, then the claimant is not entitled to benefits and there is no need to proceed with the analysis to determine whether DAA is a contributing factor material to disability.

In this case, the ALJ evaluated the evidence of record, considered the hearing testimony of Plaintiff and concluded Plaintiff was not disabled. Tr. 22-26. Even though, as Plaintiff correctly asserts, any evidence of DAA should be initially included in the sequential evaluation analysis, it is apparent the ALJ considered Plaintiff's substance abuse in formulating his disability determination. *See* Tr. 22 (noting Plaintiff not forthcoming with examiners about his history of drug abuse and probable current use; Plaintiff informed a pharmacist on April 17, 2012, he last used cocaine, methamphetamine, and marijuana around May 2011; and a urine screen on July 22, 2011, was positive for THC); Tr. 23 (finding DSHS evaluations accorded some weight because both examiners considered the impact of Plaintiff's history of drug abuse); Tr. 24 (indicating Dr. Moon noted Plaintiff started using marijuana and methamphetamine shortly after graduating from high school); Tr. 24

(noting Dr. Toews' report refers to Plaintiff's drug abuse history); Tr. 24 (giving little weight to psychological evaluations where the evaluators were not given accurate information about Plaintiff's drug use).  Since the ALJ found Plaintiff was not disabled despite the evidence of Plaintiff's substance abuse, there was no need for the ALJ to proceed with the analysis to determine whether DAA was a contributing factor material to disability.  20 C.F.R. §§ 404.1535, 416.935.

Plaintiff complains that the ALJ did not find his "severe impairments" included substance abuse addiction disorders at step two of the sequential evaluation process.  ECF No. 14 at 13.  Even assuming the ALJ erred in neglecting to list substance abuse as a severe impairment at step two, any error was harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (ALJ's failure to include impairment as severe at step two was harmless error where ALJ considered the limitations posed by the impairment at step four).

As discussed above, the ALJ discussed Plaintiff's substance abuse issues throughout his analysis.  *See supra*.  The decision reflects that the ALJ considered any limitations posed by Plaintiff's substance abuse at steps four and five, and Plaintiff has not identified any credible functional limitations that were not included in the ALJ's ultimate RFC determination.  Accordingly, any error the ALJ made by failing to include Plaintiff's substance abuse as a severe impairment at step two was harmless.  *See Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995) (an error is harmless when the correction of that error would not alter the result).  An ALJ's decision will not be reversed for errors that are harmless.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991).

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error.  Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 19**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED February 20, 2015.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE